UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAR R. HEARNS,<br><br>        Plaintiff,<br><br>    vs.<br><br>ROSA GONZALES, et al.,<br><br>        Defendants. | 1:17-cv-00038-AWI-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT GONZALES'S MOTION FOR SUMMARY JUDGMENT BE DENIED<br>(ECF No. 40.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

**I. BACKGROUND**

Jamar Hearns ("Plaintiff") is a former prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with the First Amended Complaint filed by Plaintiff on February 9, 2018, against defendant Rosa Gonzales ("Defendant") on Plaintiff's claims for retaliation, violation of the Free Exercise Clause of the First Amendment, and violation of the Bane Act.[1] (ECF No. 17.)

---

[1] On April 16, 2018, the court issued an order dismissing all other claims and defendants from this action. (ECF No. 21.)

1

On May 3, 2019, Defendant filed a motion for summary judgment on Plaintiff's Free Exercise claim. (ECF No. 40.) On June 7, 2019, Plaintiff filed an opposition to Defendant's motion.[2] (ECF No. 44.) On June 12, 2019, Defendant filed a reply to Plaintiff's opposition. (ECF No. 45.)

The motion has been submitted upon the record without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow, Defendant's motion for summary judgment should be denied.

## II. PLAINTIFF'S ALLEGATIONS[3]

Plaintiff is presently out of custody. The events at issue in the First Amended Complaint allegedly occurred at Valley State Prison (VSP) in Chowchilla, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR).

Plaintiff's allegations follow:

On December 16, 2015, defendant C/O Rosa Gonzales worked in D2. (ECF No. 17 at 5 ¶2.) C/O Gonzales told C/O Mata [not a defendant] that she (Gonzales) would do the searches today. C/O Gonzales went straight to Plaintiff's bunk area, ransacked all his property and found a folder that contained legal documents for Plaintiff's case no. 1:14-cv-1177, where she (Gonzales) is named as a defendant. Defendant Gonzales grabbed bleach from under the sink in the room, poured it on the legal papers and folder and grabbed Plaintiff's prayer rug and poured bleach all over it. Defendant Gonzales confiscated the prayer rug. The search was not performed according to policy. No other searches were conducted. Plaintiff wrote two CDCR Form 22 requests to C/O Gonzales requesting the return or replacement of the prayer rug. C/O Gonzales

---

[2] Concurrently with her motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998). (ECF No. 40-4.)

[3] Plaintiff's First Amended Complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The Court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

never responded, in violation of Title 15, CCR § 3086(f)(4). Plaintiff filed a staff complaint against C/O Gonzales for retaliation, Log #VSP-D-16-0039. The staff complaint was exhausted at the third level.

On May 26, 2016, a timely Government Tort Claim was filed, claim #G632054. On June 6, 2016, the claim was rejected and Plaintiff was informed that his complaint was best suited for the court system. To this day the damaged prayer rug has never been returned or replaced as requested in appeal Log #VSP-D-16-0039. C/O Gonzales's actions were in retaliation for Plaintiff filing lawsuit 1:14-cv-1177.

Sergeant Fonderon [not a defendant] handled the lower level appeals of Log #VSP-D-16-0039. Fonderon interviewed Plaintiff who showed Fonderon the bleached paper and folder, and Fonderon pulled the prayer rug out of the confiscation locker and saw the bleach marks on the prayer rug. Fonderon never gave the prayer rug back nor ordered it to be replaced. Plaintiff was left without a prayer rug.

Plaintiff is a Muslim. Muslims pray 5 times a day. When they pray they utilize a prayer rug which is, and represents, Holy Ground. The prayer rug allows them to pray anywhere on Holy Ground. Their religion only allows them to pray on Holy Ground, "no exceptions," so since Plaintiff's prayer rug was confiscated and not replaced, a key part of Plaintiff's ability to practice his religion is missing. Without the prayer rug Plaintiff was not able to pray at all, so he could not practice his religion.

After the events described above Plaintiff was in constant fear that defendant C/O Gonzales would return and ransack and take his property. Several times Plaintiff thought about dismissing his lawsuit, but family and friends talked him into sticking it out. He did, but was in constant fear.

Plaintiff seeks monetary damages as relief.

### III. SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted);

Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of

reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## IV. DEFENDANT'S UNDISPUTED FACTS (DUF)

Unless otherwise noted, the following facts are undisputed by the parties based on a thorough review of the record.[4]

1. At all times relevant to this case, Plaintiff was an inmate housed at Valley State Prison (VSP) in Chowchilla, California. (ECF No. 17; Declaration of Lucas L. Hennes, Ex. A at 12:14-17.)

2. On December 16, 2015, Defendant Gonzales conducted a search of Plaintiff's cell at VSP. (ECF No. 17 at 5.)

3. As part of the search on December 16, 2015, Defendant Gonzales confiscated Plaintiff's prayer rug. (ECF No. 17 at 5.)

4. Defendant Gonzales told Plaintiff she would speak to the Muslim Imam about getting him a new prayer rug. (Declaration of Lucas L. Hennes, Ex. A at 73:1-7, 83:14-24.)

5. Three weeks after the search, when Defendant Gonzales had not provided Plaintiff with a new prayer rug, Plaintiff spoke to the Muslim Imam at VSP about getting a new prayer rug. (Declaration of Lucas L. Hennes, Ex. A at 55:1-22.)

6. The Muslim Imam at VSP was not willing to provide Plaintiff with a new prayer rug because Plaintiff did not attend Muslim services at VSP. (Declaration of Lucas L. Hennes, Ex. A at 55:1-22, 58:11-14.)

///

---

[4] Plaintiff failed to properly address Defendant's statement of undisputed facts, as required by Local Rule 260(b). Accordingly, the court may consider Defendant's assertions of fact as undisputed for purposes of this motion. Id.; Fed. R. Civ. P. 56(e)(2). However, in light of the Ninth Circuit's directive that a document filed *pro se* is "to be liberally construed," Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, and Rule 8(e) of the Federal Rules of Civil Procedure that "[p]leadings shall be construed so as to do justice," see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the court shall strive to resolve this motion for summary judgment on the merits.

///

7. Plaintiff had the ability to order a new prayer rug from a catalog once every three months. (Declaration of Lucas L. Hennes, Ex. A at 67:15-25.)[5]

8. Plaintiff never ordered a new prayer rug after December 16, 2015. (Declaration of Lucas L. Hennes, Ex. A at 68:2-5.)

9. At some time between December 2015 and February 2017, another inmate left VSP and left his prayer rug with Plaintiff. (Declaration of Lucas L. Hennes, Ex. A at 68:6-10.)

10. Plaintiff was able to borrow a prayer rug from another inmate so he could pray. (Declaration of Lucas L. Hennes, Ex. A at 56:10-17, 58:4-10.)[6]

11. Plaintiff cleaned himself before prayer and after bowel movements as part of his religious practice. (Declaration of Lucas L. Hennes, Ex. A at 70:4-10.)

12. Plaintiff adhered to a special diet and engaged in fasting as part of his religious practice. (Declaration of Lucas L. Hennes, Ex. A at 70:11-70:20.

13. Plaintiff engaged in multiple religious fasts at VSP between December 2015 and February 2017. (Declaration of Lucas L. Hennes, Ex. A at 70:25 – 71:14.)

14. Plaintiff had a Bible and a Koran between December 2015 and February 2017, and he read them daily as part of his religious practice. (Declaration of Lucas L. Hennes, Ex. A at 71:15 – 72:9.)

15. Plaintiff was released on parole in February 2017. (Declaration of Lucas L. Hennes, Ex. A at 12:3-4.)

---

[5] DUF #7. Plaintiff disputes this fact, stating that he did not say in his deposition, which Defendant cites as evidence supporting DUF #7, that he had the ability to order a new prayer rug from a catalog every three months. (Pltf's Oppn, ECF No. 44 at 6 ¶ b(1)). Plaintiff argues that the deposition only indicates when the next time was that he could order a new prayer rug through the catalog. (Id.) Plaintiff denies that he had the ability to order a new prayer rug. (Id.) Plaintiff declares that he did not have the means to order a prayer rug through the package company. (Declaration of Jamar Hearns, ECF No. 44 at 14:14-18.) Therefore, DUF #7 contains disputed facts, which will be discussed below in this order.

[6] DUF #10. Plaintiff disputes this fact, asserting in his deposition that he was only able to borrow a prayer rug about 20 to 25 times in a month, and Muslims pray five times a day or 150 times per month. (Decl. of Jamar Hearns, ECF No. 44 at 14:7-13.) However, Plaintiff has not disputed DUF #10 as stated. Therefore, DUF #10, as written, is an undisputed fact.

///

## V. LEGAL STANDARDS

### A. 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)); "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

To prevail against a defendant under section 1983, the plaintiff must prove that the defendant either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force

7

///

of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

### 2. **First Amendment Free Exercise Clause**

A person asserting a Free Exercise claim must show that the government action in question substantially burdens the person's practice of her religion. Jones v. Williams, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (citing Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir.1987), aff'd sub nom. Hernandez v. C.I.R., 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Ohno v. Yasuma, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks and alterations omitted)).

"The right to exercise religious practices and beliefs does not terminate at the prison door[,]" McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987)), but a prisoner's right to free exercise of religion "is necessarily limited by the fact of incarceration," Ward v. Walsh, 1 F.3d 873, 876 (9th Cir. 1993) (citing O'Lone, 482 U.S. at 348, 107 S.Ct. 2400). Jones, 791 F.3d at 1032. "To ensure that courts afford appropriate deference to prison officials," the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." Id. (quoting O'Lone, 482 U.S. at 349.) The challenged conduct "is valid if it is reasonably related to legitimate penological interests." Id. (citing O'Lone, 482 U.S. at 349 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987))).

## VI. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Gonzales moves for summary judgment on Plaintiff's Free Exercise claim on the ground that Defendant did not violate Plaintiff's constitutional rights because Plaintiff was not substantially burdened from practicing his religion.

///

Defendant offers as evidence Defendant's statement of undisputed facts, the declaration of defense counsel Lucas L. Hennes (ECF No. 40-3) and supporting exhibit, excerpts from Plaintiff's deposition transcript (ECF No. 40-3, Exh. A), and the pleadings, records, and files in this action.

Defendant argues that to the extent that Plaintiff seeks to claim that Defendant Gonzales's actions burdened his religious practice, Plaintiff fails to state a Free Exercise claim because any burden was sporadic and of short duration. Defendant argues that Plaintiff had other means of practicing his religious beliefs, and confiscation of Plaintiff's prayer rug by Defendant Gonzales and her subsequent refusal to provide a new prayer rug did not impermissibly infringe on Plaintiff's constitutional rights. Defendant asserts that Plaintiff did not identify a single instance in the First Amended Complaint where he was unable to pray due to the confiscation of his prayer rug. (See ECF No. 17, generally.) Defendant contends that Plaintiff admits that he was still able to pray using a borrowed prayer rug and later was able to pray using a prayer rug he obtained from an inmate who left VSP. (Decl. of Lucas L. Hennes, ECF No. 40-3, Exh. A at 7:10-17, 8:4-10, 13:6-10.)[7]:

> Q. So what were you doing those three weeks?
> A. So I have a group of individuals that [are] Muslim. So I just borrowed a prayer rug from someone. But you can't just keep on borrowing somebody's prayer rug. I mean what are they going to do? This is prison. You just can't borrow people's things.
> Q. You can't, but you did.
> A. Yeah, I did. You're probably right.

(Deposition of Jamar Hearnes, ECF No. 40-3 at 7:10-17.)

> Q. So did you have any other roommates in your cell who also had prayer rugs?
> A. Yeah, I did. I had one.

---

[7] All page numbers cited herein are assigned by the court's CM/ECF system and not based on the parties' pagination of their briefing materials.

9

| | | |
|---|---|---|
| 1 | Q. | And you borrowed his? |
| 2 | A. | Every now and then, but that was only because he was at work. So now he's home |
| 3 | | and I'm going use [*sic*] to his rug, you know. |

(Id. at 8:4-10.)

| | | |
|---|---|---|
| 5 | Q. | How did you pray after this incident? |
| 6 | A. | Because I end up having someone leaving, going to another prison or actually |
| 7 | | going home. They were going to a program out at home and leaving [*sic*] me their |
| 8 | | prayer rug. |

(Id. at 13:6-10.)

Defendant asserts that Plaintiff concedes that he had several additional means of observing his religious beliefs.

| | | |
|---|---|---|
| 12 | Q. | And did you have any other religious practices that you engaged in between |
| 13 | | December 2015 and February 2017? |
| 14 | A. | Oh, well, yeah. I way [*sic*] I clean myself before prayer, the way I clean myself |
| 15 | | after bowel movements, stuff like that. Yeah. That's all religious practices. You |
| 16 | | have to be clean before you come before God. |
| 17 | Q. | Do you have a special diet that you'd adhere to as part of your religious faith? |
| 18 | A. | There are diets that you take during like fasting and stuff like that. Yes, I did a |
| 19 | | lot of that fasting and stuff like that. Because like during the month of Ramadan, |
| 20 | | you have to fast. During the day, pray before you can get eat [*sic*] at night. Yeah. |
| 21 | | I used to do different types of fast [*sic*] where I have would fast [*sic*] for seven |
| 22 | | days at a time. No water or food all day, morning or night, so nothing. |

(Id. at 14:4-20.)

| | | |
|---|---|---|
| 24 | Q. | Do you remember if you ever engaged in one of those seven-day fasts while you |
| 25 | | were at Valley State Prison? |
| 26 | A. | Of course, many times. |
| 27 | Q. | Do you recall if you did that between December 2015 and February 2017? |
| 28 | A. | Between 2015 and 2017? |

| | | |
|---|---|---|
| 1 | Q. | Right. |
| 2 | A. | Before I went home? |
| 3 | Q. | Yes. |
| 4 | A. | Yes, I did. In fact, I did a few. I was getting myself mentally and spiritually |
| 5 | | prepared to go to a new coming [*sic*] as far as being released from incarceration |
| 6 | | to, what does the world hold for me. So far, it's held a lot of good. |
| 7 | Q. | Did you have any religious artifacts or texts with you at Valley State Prison? |
| 8 | A. | Texts? |
| 9 | Q. | Like Bibles or the Koran? |
| 10 | A. | Yes. |
| 11 | Q. | What did you have? |
| 12 | A. | I had a Bible and a Koran. |
| 13 | Q. | Both of them? |
| 14 | A. | Yes. |
| 15 | Q. | And you had those in your – did you have them in your bunk area at Valley State |
| 16 | | Prison? |
| 17 | A. | No, there's a locker. |
| 18 | Q. | So you had them in your locker. Did you have them between December 2015 and |
| 19 | | February – |
| 20 | A. | I've always had them. |
| 21 | Q. | -- and February 2017? |
| 22 | A. | Yes. |
| 23 | Q. | And did you read those? |
| 24 | A. | Yes, I did, daily. |

(Id. at 14:25-16:9.)

Defendant also argues that Plaintiff's failure to diligently seek a new prayer rug demonstrates that its absence was not a substantial burden on his ability to practice his religion. Defendant asserts that Plaintiff waited three weeks after the incident to ask the Imam for a

11

1  ///

replacement prayer rug, and he did not follow up when the Imam denied his request except to file a grievance.

| | | |
|---|---|---|
| Q. | | Mr. Hearns, you indicated inmates have the ability to request new prayer rugs from the Muslim Imam; correct? |
| A. | | Yes. |
| Q. | | Did you do so here? |
| A. | | I went and spoke to the Imam, but because I didn't attend his services, he was not willing to help in that. And then – actually, it was a lady. The Imam was a lady and she ended up leaving and they got a new Imam so. |
| Q. | | All right. So you said yes, you spoke to the Imam at Valley State Prison regarding getting a new prayer rug; is that right? |
| A. | | Yes, I did. |
| Q. | | When did you do that? |
| A. | | Probably maybe two, maybe three weeks after the incident. |
| Q. | | Why did you wait? |
| A. | | Because I waited for her to get my prayer rug back or get me another one on her own. But since she was dragging her feet and not doing it, I had to go take it into my own hands now and go get my own. |

(Id. at 6:1-22.)

Defendant concludes that no reasonable jury would find that Defendant Gonzales imposed a substantial burden on Plaintiff's ability to practice his religious beliefs.

**VII.  DEFENDANT'S BURDEN**

Based on the foregoing, the court finds that Defendant has met her burden of setting forth evidence that there is no genuine issue of material fact for trial, which shifts the burden to Plaintiff to submit admissible evidence showing the existence of genuine issues for trial.

**VIII.  <u>ANALYSIS</u>**

Defendant seeks summary judgment on Plaintiff's Free Exercise claim, but not on any other claim. In order to establish a Free Exercise violation, Plaintiff must show that Defendant Gonzales substantially burdened the practice of Plaintiff's religion when she confiscated his prayer rug, thus preventing him from engaging in conduct he sincerely believes is mandated by his faith.

### A. Sincere belief

In the motion for summary judgment, Defendant does not dispute that Plaintiff has a sincere belief that using a prayer rug during prayers is necessary for the free exercise of his religion.

Plaintiff states in the First Amended Complaint:

> "Plaintiff is a Muslim. Muslims pray 5 times a day. When they pray, they utilize a prayer rug which is, and represents, Holy Ground. The prayer rug allows them to pray anywhere on Holy Ground. Their religion only allows them to pray on Holy Ground, "no exceptions," so since Plaintiff's prayer rug was confiscated and not replaced a key part of Plaintiff's ability to practice his religion is missing."

(ECF No. 17 at 6 ¶ 10.)

Thus, the improper confiscation of Plaintiff's prayer rug and refusal to return or replace it implicates the Free Exercise Clause. See Shakur, 514 F.3d at 885. Therefore, this element of a free exercise claim is satisfied in Plaintiff's favor.

### B. Seizure of Religious Property

Defendant also does not dispute that on December 16, 2015, defendant Gonzales conducted a search of Plaintiff's cell at VSP; as part of the search on December 16, 2015, Defendant Gonzales confiscated Plaintiff's prayer rug; and three weeks after the search, Defendant Gonzales had not provided Plaintiff with a new prayer rug. (See Defendant's Undisputed Facts Nos. 2, 3, 5.)

Plaintiff alleges in the First Amended Complaint:

> "On 12/16/15, Gonzales went straight to Plaintiff's bunk area [and] grabbed Plaintiff's prayer rug . . . Gonzales confiscated the prayer rug . . . [and] the prayer rug was never returned or replaced [by Gonzales]."

(ECF No. 17 at 5 ¶ 2, 4 ¶ 6.)

On this record, this element of a free exercise claim is satisfied in Plaintiff's favor.

**C. <u>Substantial Burden</u>**

The Ninth Circuit explained:

> "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion. A substantial burden . . . places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs . . . ."

(<u>Jones</u>, 791 F.3d at 1031.)

A substantial burden exists where the state "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." <u>Thomas v. Review Bd. of Ind. Employment Sec. Div.</u>, 450 U.S. 707, 717-18 (1981). A short term intrusion does not constitute a substantial burden. <u>Canell</u>, 143 F.3d at 1212.

The court finds in this case that a dispute of material fact exists between Plaintiff and Defendant that raises a genuine issue for trial as discussed below.

Defendant asserts that Plaintiff was only sporadically deprived of his prayer rug because Plaintiff borrowed prayer rugs from other Muslim inmates, used his roommate's prayer rug when the roommate was out of the cell, and later obtained his own prayer rug when another inmate left the prison. (Pltf's Depo., ECF No. 40-3 at 7:10-25, 13:6-10.) However, Plaintiff declares in his opposition that he was only able to borrow a prayer rug about 20 to 25 times in a month, and Muslims pray five times a day, or 150 times per month. (Decl. of Jamar Hearns, ECF No. 44 at 14:7-13.)

Defendant asserts that Plaintiff waited three weeks after the incident to ask the Imam for a replacement prayer rug (ECF No. 40-3 at 7:2-3), and Plaintiff did not follow up after his request was denied except to file a grievance (ECF No. 40-3 at 11:2-7). However, Plaintiff states that after the rug was taken he submitted two Form 22 requests to Defendant asking for return of the rug (ECF No. 17 at 4 ¶ 3); that 2-to-3 weeks after the incident he asked the Imam for a rug (Pltf's Depo., ECF No. 40-3 at 6:25-7:3); that he borrowed prayer rugs from other inmates when he could (Pltf's Depo, ECF No. 7:11-25); that he filed a staff complaint about the incident and exhausted the complaint to the third level of review (ECF No. 17 at 4 ¶ 4); and that on May 26, 2016, he submitted a Government Tort Claim that was rejected on June 6, 2016 (ECF No. 17 at 4 ¶ 5).

Defendant asserts that Plaintiff had the ability to order a new prayer rug for himself, but he did not order one. (DUF # 7; Hennes Decl., ECF No. 40-3, Exh. A at 12:15-25, 13:1-5.) However, Plaintiff declares that he could not order a new prayer rug through the package company because he did not have the means to order one. (Hearns Decl., ECF No. 44 at 14 :16-18 ("Mr. Hennes did not ask me if I had anyone that would order [a prayer rug] for me or if I even had money to order one. I did not have the means to order a prayer rug through the package company."))

The court finds that the parties' disputes of fact discussed above raise genuine issues for trial. Therefore, Defendant's motion for summary judgment should be denied.

## IX. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing analysis, the court finds genuine issues of material fact for trial. Therefore, Defendant's motion for summary judgment should be denied.

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Gonzales's motion for summary judgment, filed on May 3, 2019, be DENIED; and
2. This case be referred back to the Magistrate Judge for further proceedings.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within

**fourteen (14) days** after the date of service of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **seven (7) days** of the date the objections are filed. The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **January 17, 2020**                  **/s/ Gary S. Austin**
                                                                UNITED STATES MAGISTRATE JUDGE